### GRAHAM v. MILES.

(District Court, D. Maryland.   November 21, 1922.)

**Internal revenue ☞7—Salaries of federal judges not subject to income tax under Revenue Act 1918.**

> The provision of Revenue Act 1918, § 213(a), being Comp. St. Ann. Supp. 1919, § 6336⅛ff, including in income taxable thereunder salaries of all federal judges, regardless of the date of their appointment, having been declared by the Supreme Court unconstitutional and void as written, cannot be construed by the courts to apply only to judges appointed after its enactment and valid as to them.

At Law.   Action by Samuel J. Graham against Joshua W. Miles, formerly Collector of Internal Revenue.   On demurrer to declaration. Overruled.

Marbury, Gosnell & Williams, of Baltimore, Md., for plaintiff.

Amos W. W. Woodcock, U. S. Atty., of Baltimore, Md., for defendant.

ROSE, District Judge.   The plaintiff, Samuel J. Graham, is a judge of the Court of Claims having, after due appointment and confirmation, qualified as such on September 1, 1919.   He is here suing to recover an aggregate of $385.21, being the amount of the income taxes for 1919 and 1920 paid by him under protest, because of the inclusion in his taxable income by the defendant, then collector of internal revenue, of plaintiff's salary as judge of an inferior court of the United States.   The defendant has demurred to the declaration, and, as the facts are undisputed, the ruling upon the demurrer will, in all probability, determine the case.

A brief history of the legislation of Congress, so far as it relates to the imposition of an income tax upon presidential and judicial salaries, may aid in making clear the precise points here involved.   By the act of 1913, which was the first taxing statute after the adoption of the Sixteenth Amendment, it was provided, in subdivision B of section 2, 38 Stat. 168:

> "That in computing net income under this section there shall be excluded the * * * compensation of the present President of the United States during the term for which he has been elected, and of the judges of the supreme and inferior courts of the United States now in office. * * *"

Section 4 of the act of 1916 (39 Stat. 758) used the same language, and thereby apparently relieved from taxation the salaries of such

judges as had come into office between 1913 and September 8, 1916, when the Revenue Act of the latter year received executive approval. As the rates imposed in 1916 were higher than those levied three years before, and as Congress still acted under the assumption that the salary a federal judge was entitled to receive when he went into office could not be diminished by subsequently imposed taxes, the probabilities are that the release from taxation of the salaries of all judges in office in 1916 was deliberate.

The Revenue Act of 1918, as it is officially called, although it was not approved until February 24, 1919, repealed the law of 1916 and imposed new and still heavier rates of taxation. Congress then made up its mind to attempt to tax the salaries of the President and all the federal judges. The advocates of the new policy frankly admitted that there was grave doubt as to whether it was constitutional, but said it was desirable to have the question finally settled, and the way to do so was to impose the tax, so that the Supreme Court might pass upon its validity. It is obvious, from the debates in the House (56 Cong. Record, part 10, p. 10365 et seq.) and from the reports of the committees of the two houses, that the reason for making the attempt was not so much the desire to get for the Treasury the comparatively small sum that would be yielded by the tax upon presidential and judicial salaries, as it was to establish the rule that all persons whatsoever should contribute in the manner and at the rates prescribed by the act.

It should be said that the legislative history of the measure does not indicate any hostility to the judiciary, but it does show how strong was the feeling that in matters of taxation judges should be dealt with as was everybody else. Then, on June 1, 1920, the Supreme Court, in Evans v. Gore, 253 U. S. 245, 40 Sup. Ct. 550, 64 L. Ed. 887, 11 A. L. R. 519, decided that the provision in question was in conflict with the Constitution, and was therefore invalid. The case actually before them was that of a judge who had come into office as far back as 1899.

Subsequent to the decision of the court, no further taxing act was passed until November 23, 1921 (42 Stat. 227), some time after Judge Graham's term of office began. Although the provision in the act of 1918, in so far as it attempted to include in taxable income the salaries of judges appointed before its enactment, has been held void and of no effect, the government contends, first, that Congress might constitutionally have provided for the taxing of the salary of a judge subsequently coming into office; and, second, that the provision of section 1402 of the Act of February 24, 1919 (40 Stat. 1150 [Comp. St. Ann. Supp. 1919, § 6371¾b]), requires that the tax shall be levied upon the salary of plaintiff, who admittedly became a judge subsequent to its passage. To this the plaintiff replies that Congress may not tax the salary of any judge of the United States, irrespective of whether he entered on his office before or after the act was passed, and, even if that be not so, that the statute here attempted to tax all judges, and that effort having failed, it is not within the power of the court to say that Congress would not have taxed a few judges,

if it had known that its effort to levy the charge upon the great majority would fail.

The first issue raised is obviously of far-reaching importance. On behalf of the plaintiff it is said that the Constitution intended to protect the independence of the executive and judicial branches of the government against the possible desire of the Legislature to control them. Unless the salary of a judge would have been taxable before the Sixteenth Amendment, it may not be taxed now; for that amendment does not subject to taxation anything which could not before have been taxed, but merely exempts a tax upon incomes from a previously existing requirement of apportionment among the states. Evans v. Gore, supra.

The inclusion of a salary of a judge in his taxable income is a tax upon it and a diminution of its amount. The contention that it is a charge upon his income as a whole, in which his salary has become so far merged that the source from which it comes is no longer material, was definitely rejected in the last-cited case. The framers of the Constitution, by the detail into which they went in this matter, evidenced how solicitous they were to protect the pecuniary independence of the judges from indirect, as well as direct, attack. Not only are their salaries not to be diminished during their continuance in office, but the Constitution takes pains to provide that they shall be paid to "them at stated times." It is urged that part of what the Constitution requires to be paid at a stated time cannot afterwards be taken back. The payment, once made, is altogether irrevocable by any means or device whatsoever.

It is further said that in practice it will be impossible to secure a judge against any greater tax than that which was imposed by the taxing statutes in force when he went into office. Under our system of surtaxes constantly changing, both in rate and method of ascertainment, and even under the same statute being greatly affected by the greater or less receipt of income from other sources, the actual tax imposed upon a judge's salary will constantly vary. If the past is any criterion for the future, the taxing statutes will be materially altered every few years, with the result that there will be among the judges any number of classes, each subject to a different tax, being that in force when they went into office, and thus there will be no uniformity in the burdens imposed upon them.

To sum up the whole matter, it is urged that the Constitution shows an unmistakable intention to deny to Congress any power to cut down a judicial salary. The government replies that a tax imposed upon a compensation before a judge goes into office is merely an exercise of the admitted power of Congress to fix a lower salary for judges subsequently appointed than it was paying those already on the bench, and it is suggested that it makes no real difference whether the amount of the tax is deducted from the salary before it is paid the judge, or is subsequently compulsorily collected from him. It will be noted that this argument loses sight of the practical fact that, as our tax laws are, it will not be possible to ascertain in advance the amount of a tax, and, as a consequence, the amount of a salary which is guaranteed

him, for that will depend on many things which may happen after the judge goes into office, or even after the salary is payable, and, under the Constitution, must be paid.

If the question were as simple as the government represents it to be, there would be no occasion to raise it at all. If Congress were content to reduce the salaries of judges hereafter to be appointed by a sum, in its view, equivalent to the tax on their salaries, if the latter were taxable, there is absolutely nothing in the way of its doing so. If it thinks 6 per cent. is about the tax which they should pay, it may provide that the salaries of all District Judges hereafter to be appointed shall be, not $7,500, as now, but only $7,050, and of all Circuit Judges $7,990, instead of $8,500, and so on. That way of accomplishing the same result, which, the government claims, is attained by the present law, is obvious and easy. The failure of Congress to adopt it, and the fact that no one seems ever seriously to have proposed it, strongly suggests that the end really sought could not in that way be reached. What is wanted is, not to make a saving in the net charge upon the Treasury for judicial salaries, but to include the salaries of the judges in their taxable income, so that they may be assessed as other men are.

If the view of Mr. Justice Holmes, as expressed in his dissenting opinion in Evans v. Gore, supra, concurred in, as it was, by Mr. Justice Brandeis, had prevailed, the whole matter would be simple enough. The income tax, though based on a total income of which the salary is a part, from that standpoint was not a tax upon the salary at all, and consequently was not a diminution of it. But the court of last resort has held otherwise, and it may be difficult to see how, in accordance with views therein expressed, it is possible for Congress constitutionally to impose upon judicial salaries such income taxes as are now levied, at least in the way in which their amounts are now ascertained. Whether it can or cannot be done it is, fortunately, not necessary in this case to decide; for it would seem to be clear that in any event the declaration of the plaintiff discloses a good cause of action. Unless he was taxable under the act of 1918, he was not taxable at all. If he is taxable under that statute, he is so by virtue of a clause which applies to all the federal judges, irrespective of the time they came upon the bench. That clause as written has been held invalid.

The government, however, contends that, because of the provisions of section 1402 of the Revenue Act of 1918 (40 Stat. 1150 [Comp. St. Ann. Supp. 1919, § 6371¾b]), the provision still remains in force so far as concerns judges who took office, as did the plaintiff, after its enactment. The section relied upon is as follows:

"That if any clause, sentence, paragraph, or part of this Act shall for any reason be adjudged by any court of competent jurisdiction to be invalid, such judgment shall not affect, impair, or invalidate the remainder of this Act, but shall be confined in its operation to the clause, sentence, paragraph, or part thereof directly involved in the controversy in which such judgment has been rendered."

Obviously, however, this section does not help the defendant. When the clause which has been declared invalid is out of the act, no other

imposes the tax. What the court here is asked to do is to rewrite the pertinent portion of the statute in question, so that it will read as did the provisions of the acts of 1913 and 1916 relative to this general subject. But that would be for the court to do what Congress expressly decided not to do. With its eyes wide open to the possible consequences, it made up its mind to seek uniformity by imposing the tax upon all judges. Whether it would or would not have been willing to tax the minority, if the majority were immune, nobody knows, perhaps not even the members of that Congress, for upon that question they never were called upon to make up their minds.

In the Revenue Act of 1921 there is a section which, if it had been present in the act of 1918, would have afforded a far stronger ground for the government's contention. It is numbered 1403 (42 Stat. 321), and declares:

"That if any provision of this act, or the application thereof to any person or circumstances, is held invalid, the remainder of the act, and the application of such provision to other persons or circumstances, shall not be affected thereby."

A ground assigned in defendant's original demurrer to the plaintiff's declaration is that the Court of Claims is not one of the inferior courts of the United States. This contention was abandoned at the argument, and rightly so. U. S. v. Klein, 13 Wall. 128, 20 L. Ed. 519; U. S. v. Louisiana, 123 U. S. 32, 35, 8 Sup. Ct. 17, 31 L. Ed. 69.

As the statutes and the decisions stand, the demurrer to the plaintiff's declaration must be overruled.